## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WALTER STERN, Individually and on Behalf of All Others Similarly Situated, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. |
| v. | ) |
| | ) **CLASS ACTION COMPLAINT FOR** |
| EXPRESS SCRIPTS HOLDING | **VIOLATIONS OF SECTIONS 14(a) AND** |
| COMPANY, MAURA C. BREEN, | **20(a) OF THE SECURITIES** |
| WILLIAM J. DELANEY, ELDER | **EXCHANGE ACT OF 1934** |
| GRANGER, NICHOLAS J. LAHOWCHIC, | |
| THOMAS P. MAC MAHON, KATHLEEN | **JURY TRIAL DEMANDED** |
| M. MAZZARELLA, WOODROW A. | |
| MYERS, JR., FRANK MERGENTHALER, | |
| RODERICK A. PALMORE, GEORGE | |
| PAZ, WILLIAM L. ROPER, SEYMOUR | |
| STERNBERG, and TIMOTHY | |
| WENTWORTH, | |
| | ) |
| Defendants. | ) |

Plaintiff Walter Stern ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.       This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Express Scripts Holding Company ("Express Scripts" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Express Scripts, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed

Merger") between Express Scripts and Halfmoon Parent, Inc. ("New Cigna"), a wholly owned subsidiary of Cigna Corporation (collectively, "Cigna").

2.      On March 8, 2018, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which each share of Express Scripts common stock will be exchanged for $48.75 in cash and 0.2434 shares of New Cigna common stock (the "Merger Consideration").

3.      On June 20, 2018, in order to convince Express Scripts shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading amended Registration Statement on Form S-4 (the "S-4") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.  The date of the shareholder meeting is currently pending.

4.      While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the S-4, they have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the S-4 false and/or misleading.

5.      In particular, the S-4 contains materially incomplete and misleading information concerning: (i) the financial projections for the Company; and (ii) potential conflicts of interests with one of the Company's financial advisors.

6.      It is imperative that the material information that has been omitted from the S-4 is disclosed to the Company's shareholders prior to the forthcoming shareholder vote, so that they can properly exercise their corporate suffrage rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for contraventions of: (i) Rule 14a-9; and (ii) Regulation G, 17 C.F.R. § 244.100, in

violation of Sections 14(a) and 20(a) of the Exchange Act.  Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless, and until, the material information discussed below is disclosed to Express Scripts shareholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Express Scripts is incorporated in this District.

## PARTIES

11.    Plaintiff is, and at all relevant times has been, an Express Scripts shareholder.

12.    Defendant Express Scripts is incorporated in Delaware and maintains its principal executive offices at One Express Way, St. Louis, Missouri 63121.  The Company trades on the Nasdaq GS under the ticker symbol: "ESRX".

13.     Individual Defendant Maura C. Breen has served as a director of the Company since July 2004.

14.     Individual Defendant William J. Delaney has served as a director of the Company since September 2011.

15.     Individual Defendant Elder Granger has served as a director of the Company since May 2015.

16.     Individual Defendant Nicholas J. LaHowchic has served as a director of the Company since July 2001.

17.     Individual Defendant Thomas P. Mac Mahon has served as a director of the Company since March 2001 and as Lead Independent Director since May 2008.

18.     Individual Defendant Kathleen M. Mazzarella has served as a director of the Company since June 2017.

19.     Individual Defendant Woodrow A. Myers, Jr. has served as a director of the Company since May 2007.

20.     Individual Defendant Frank Mergenthaler has served as a director of the Company since January 2009.

21.     Individual Defendant Roderick A. Palmore has served as a director of the Company since September 2014.

22.     Individual Defendant George Paz has served as a director of the Company since January 2004, as Chairman of the Board since May 2006, and served in various senior executive positions since 1998.

23.     Individual Defendant William L. Roper has served as a director of the Company since April 2012.

24.     Individual Defendant Seymour Sternberg has served as a director of the Company since March 1992.

25.     Individual Defendant Timothy Wentworth has served as President of the Company since February 2014, CEO of the Company since May 2016 and as a director of the Company since June 2015.

26.     The Individual Defendants and Express Scripts may collectively be referred to as "Defendants."  Each of the Individual Defendants herein is sued individually as well as in his or her capacity as an officer and/or trustee of the Company, and the liability of each arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Express Scripts (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

28.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of April 27, 2018, there were approximately 561,721,000 shares of Express Scripts common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country.  The actual number of public shareholders of Express Scripts will be ascertained through discovery;

b.      There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)      whether Defendants disclosed material information that includes non-GAAP financial measures without a presentation and reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii)     whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the S-4 in violation of Section 14(a) of the Exchange Act;

iii)    whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iv)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading S-4.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

29.     Express Scripts is a pharmacy benefit management and managed care company in North America, serving customers such as managed care organizations, insurance carriers, third-party administrators, and employers.

30.     On March 8, 2018, the Company and Cigna jointly announced the Proposed Merger in a press release which states, in pertinent part:

> BLOOMFIELD, Conn. & ST. LOUIS — BUSINESS WIRE — Cigna Corporation (NYSE: CI) and Express Scripts Holding Company (NASDAQ: ESRX) today announced that they have entered into a definitive agreement whereby Cigna will acquire Express Scripts in a cash and stock transaction valued at approximately $67 billion, including Cigna's assumption of approximately $15 billion in Express Scripts debt. The merger consideration will consist of $48.75 in cash and 0.2434 shares of stock of the combined company per Express Scripts share. The transaction was approved by the board of directors of each company.
>
> "Cigna's acquisition of Express Scripts brings together two complementary customer-centric services companies, well-positioned to drive greater quality and affordability for customers," said David M. Cordani, President and Chief Executive Officer of Cigna. "This combination accelerates Cigna's enterprise mission of improving the health, well-being and sense of security of those we serve, and in turn, expanding the breadth of services for our customers, partners, clients, health plans and communities. Together, we will create an expanded portfolio of health services, delivering greater consumer choice, closer alignment between the

customer and health care provider, and more personalized value. This combination will create significant benefits to society and differentiated shareholder value."

"First and foremost, we believe this transaction delivers attractive value to the Express Scripts shareholders" said Tim Wentworth, President and Chief Executive Officer of Express Scripts. Regarding the combination of Cigna and Express Scripts, Mr. Wentworth noted, "Together, our two organizations will help make the healthiest choices the easiest choices, putting health and pharmacy services within reach of everyone we serve. Adding our company's leadership in pharmacy and medical benefit management, technology-powered clinical solutions, and specialized patient care model to Cigna's track record of delivering value through innovation, we are positioned to transform healthcare. We will continue to have a distinct focus at Express Scripts and eviCore on partnering with health plans, and together, build tailored solutions for health plans and their members. Importantly, this agreement is a testament to the work of our team and their resolute focus on providing the best care to patients, and the most value to clients."

**Compelling Strategic Benefits**

- **Expanded Consumer Choice.** Offering a full suite of medical, behavioral, specialty pharmacy and other health engagement services accessible across a wide array of retail and online distribution channels, providing optionality for all customers. This will position the combined company to deliver superior services, responding fully to the dynamic needs of our customers and clients, which will drive long-term value creation for shareholders.

- **Patient-Provider Alignment.** Using a broad and proven network of delivery system partnerships to drive the combined company's role as the connective tissue between individuals and their health care providers, providing a more coordinated approach to an individual's health care journey, reducing complexity and creating better outcomes.

- **Personalized Value.** Making health care simpler for consumers by harnessing actionable insights and predictive analytics, maximizing adoption of evidence-based care and delivering industry-leading innovation and medical technology to support care decisions.

**Terms of the Agreement**

Under the terms of the definitive agreement, the transaction consideration will consist of $48.75 in cash and 0.2434 shares of stock of the combined company per Express Scripts share, or $54 billion in the aggregate. Upon closing of the transaction, Cigna shareholders will own approximately 64% of the combined company and Express Scripts shareholders will own approximately 36%. The consideration represents an approximately 31% premium to Express Scripts' closing price of $73.42 on March 7, 2018.

Upon closing, the combined company will be led by David M. Cordani as President and CEO. Tim Wentworth will assume the role of President, Express Scripts. The combined company's board will be expanded to 13 directors, including four independent members of the Express Scripts board.

The combined company will be named Cigna. Cigna's headquarters in Bloomfield, Connecticut, will become the headquarters for the combined company, and Express Scripts will be headquartered in St. Louis, Missouri. At closing, the combined company will make an incremental investment of $200 million in its charitable foundation, to support the communities in which it operates, and with the continued focus on improving societal health.

31.    The Merger Consideration appears inadequate in light of the Company's current financial performance.  Indeed, the implied value of the Merger Consideration, approximately $96.15 per share, represents a paltry 14% increase over the Company's unaffected 52-week high, which is an insufficient premium for a Company that has reported double digit net income growth and earnings per share for the past three years.

32.    In sum, it appears that that the Merger Consideration fails to adequately compensate the Company's shareholders in exchange for the assets on the Company's balance sheet.  It is imperative that Defendants disclose the material information they have omitted from the S-4, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

**The Materially Incomplete and Misleading S-4**

33.    On June 20, 2018, Defendants caused the S-4 to be filed with the SEC in connection with the Proposed Merger.  The S-4 solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the S-4 before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the S-4 misrepresents and/or omits both required and material information that is necessary for the Company's shareholders to make an

informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *The Materiality of Financial Projections*

34.     A company's financial projections are material information a board relies on to determine whether to approve a merger transaction and recommend that shareholders vote to approve the transaction.   Here, the financial forecasts were relied on to approve the Merger Agreement and recommend the Proposed Merger to shareholders. The S-4 discloses that the financial projections above were prepared by the Company's management "[i]n connection with the review of the [proposed] mergers. . . ."  S-4 at 142.

35.     When soliciting proxies from shareholders, a company must furnish the information found in Schedule 14A (codified as 17 C.F.R. § 240.14a-101).  Item 14 of Schedule 14A sets forth the information a company must disclose when soliciting proxies regarding mergers and acquisitions.  In regards to financial information, companies are required to disclose "financial information required by Article 11 of Regulation S-X[,]" which includes Item 10 of Regulation S-K.  *See* Item 14(7)(b)(11) of 17 C.F.R. § 240.14a-101.

36.     Under Item 10 of Regulation S-K, companies are encouraged to disclose "management's projections of future economic performance that have a reasonable basis and are presented in an appropriate format."  17 C.F.R. § 229.10(b).  Although the SEC recognizes the usefulness of disclosing projected financial metrics, the SEC cautions companies to "take care to assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items."  *Id.*

37.     In order to facilitate investor understanding of the Company's financial projections, the SEC provides companies with certain factors "to be considered in formulating and disclosing such projections[,]" including:

> (i) When management chooses to include its projections in a Commission filing, *the disclosures accompanying the projections should facilitate investor understanding of the basis for and limitations of projections.* In this regard investors should be cautioned against attributing undue certainty to management's assessment, and the Commission believes that investors would be aided by a statement indicating management's intention regarding the furnishing of updated projections. *The Commission also believes that investor understanding would be enhanced by disclosure of the assumptions which in management's opinion are most significant to the projections or are the key factors upon which the financial results of the enterprise depend and encourages disclosure of assumptions in a manner that will provide a framework for analysis of the projection.*

> (ii) Management also should consider whether disclosure of the accuracy or inaccuracy of previous projections would provide investors with important insights into the limitations of projections. In this regard, *consideration should be given to presenting the projections in a format that will facilitate subsequent analysis of the reasons for differences between actual and forecast results.* An important benefit may arise from the systematic analysis of variances between projected and actual results on a continuing basis, since such disclosure may highlight for investors the most significant risk and profit-sensitive areas in a business operation.

17 C.F.R. § 229.10(b)(3) (emphasis added).

38.     As discussed further below, the financial projections here do not provide Express Scripts's shareholders with a materially complete understanding of the assumptions and key factors, which shareholders would find material since the Board's recommendation that shareholders vote in favor of the Proposed Merger was based, in part, on the following:

> the current and prospective economic and competitive environment facing the health care industry and Express Scripts as a standalone PBM[, S-4 at 114; and]

> the review and analysis of Express Scripts' and Cigna's businesses, historical financial performance and condition, operations, properties, assets, projections, regulatory issues, competitive positions, prospects and management, including the results of the business, financial, accounting and legal due diligence investigations of Cigna[.]

S-4 at 116.

### *The Financial Projections are Materially Incomplete*

39.     The S-4 discloses certain financial projections for the Company on pages 144-45. However, the S-4 fails to provide material information concerning the projections, which were developed by the Company's management and relied upon in recommending that shareholders vote in favor of the Proposed Merger.  S-4 at 114-16.

40.     Specifically, the S-4 provides values for non-GAAP measures: (1) Total Revenues; (2) Core Revenues; (3) Adjusted EBITDA; (4) Core EBITDA; (5) Adjusted Net Income; and (6) Adjusted EPS, but fails to provide the line items used in their respective calculation or a reconciliation of these non-GAAP measures to their respective most comparable GAAP measures. S-4 at 144-45

41.     Moreover, the S-4 discloses that both of the Company's financial advisors, Centerview Partners LLC ("Centerview") and Lazard Freres & Co. LLC ("Lazard"), calculated unlevered free cash flows ("UFCF") as part of their respective financial analyses and that the Company expressly approved of those calculations.  S-4 at 144-45.  Moreover, the S-4 discloses that the line items used to calculate UFCF were "provided in the Express Scripts management forecasts or [were] otherwise provided by Express Scripts management."  S-4 at 145.  Despite having this information available, the S-4 provides an incomplete and materially misleading understanding of the Company's future financial prospects and the inputs and assumptions for which those prospects are based.

42.     As a result of the Company's incomplete disclosures surrounding the calculation of UFCF by the financial advisors, the S-4 is materially misleading as shareholders are provided an incomplete and materially misleading understanding of the Company's future prospects, despite the information being readily available to the Company and the Company's acknowledgement that

the forecasts "are subjective in many respects[,]" "subject to interpretation[,]" and "reflect numerous estimates and assumptions made by the management of Express Scripts[.]"  S-4 at 143.

43.    As such, this information must be disclosed in order to cure the materially misleading disclosures regarding both the financial projections developed by the Company as well as the projections relied upon by the Company's financial advisors.

### The Financial Projections Violate Regulation G

44.    The SEC has acknowledged that potential "misleading inferences" are exacerbated when the disclosed information contains non-GAAP financial measures[1] and adopted Regulation G[2] "to ensure that investors and others are not misled by the use of non-GAAP financial measures."[3]  More specifically, the company must disclose the most directly comparable GAAP financial measure <u>and</u> a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.  This is because the SEC believes "this reconciliation will help investors . . . to better evaluate the non-GAAP financial measures . . . [and] more accurately evaluate companies' securities and, in turn, result in a more accurate pricing of securities."[4]

45.    Moreover, the SEC has publicly stated that the use of non-GAAP financial

---

[1]    Non-GAAP financial measures are numerical measures of future financial performance that exclude amounts or are adjusted to effectively exclude amounts that are included in the most directly comparable GAAP measure. 17 C.F.R. § 244.101(a)(1).

[2]    Item 10 of Regulations S-K and S-B were amended to reflect the requirements of Regulation G.

[3]    United States Securities and Exchange Commission, *Final Rule: Conditions for Use of Non-GAAP Financial Measures* (2002), *available at* https://www.sec.gov/rules/final/33-8176.htm (last visited June 27, 2018) ("SEC, *Final Rule*").

[4]    SEC, *Final Rule.*

measures can be misleading.[5]  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Express Scripts included in the S-4 here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[6]

46.    Compliance with Regulation G is mandatory under Section 14(a), and non-compliance constitutes a violation of Section 14(a).  Thus, in order to bring the S-4 into compliance with Regulation G, Defendants must provide a reconciliation of the non-GAAP financial measures to their respective most comparable GAAP financial measures.

---

[5]    *See, e.g*., Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures:  The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/ (last visited June 27, 2018); Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0  (last visited June 27, 2018).

[6]    Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (footnotes omitted).

***The Financial Projections are Materially Misleading and Violate SEC Rule 14a-9***

47.     In addition to the S-4's violation of Regulation G, the lack of reconciliation, or at the very least, the line items utilized in calculating the non-GAAP measures renders the financial projections disclosed materially misleading as shareholders are unable to understand the differences between the non-GAAP measures and their respective most comparable GAAP financial measures.

48.     Such projections are necessary to make the non-GAAP projections included in the S-4 not misleading.   Indeed, Defendants acknowledge the misleading nature of non-GAAP projections, as Express Scripts shareholders are cautioned that the projections "are subjective in many respects[,]" and "reflect numerous estimates and assumptions . . . ."  S-4 at 143.

49.     As such, in order to cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted information on pages 144-45, Defendants must provide a reconciliation table of the non-GAAP financial measures to the most comparable GAAP measures.

**Material Omissions Concerning Lazard's Potential Conflicts of Interest**

50.     The S-4 also omits material information related to prior engagements between the Company and its financial advisor, Lazard.  Without this information, shareholders are unable to determine whether Lazard's fairness opinion is truly free of bias.

51.     More specifically, the S-4 discloses that Lazard has acted as the Company's financial advisor in the past.  Although the S-4 discloses that Lazard provided financial services to the Company in connection with a prior acquisition, it is unclear if that is the only time in the past two years that Lazard has been engaged by the Company.  S-4 at 138.  Moreover, the S-4 fails to provide the actual amount of compensation that Lazard has received from the Company.  S-4 at

138.  Considering the $50 million fee that Lazard is set to receive here if the deal is consummated, shareholders would clearly find it material to know how much Lazard has earned from the Company in the past.

52.     Without this information, the Company's shareholders are being misled by the Defendants' selective disclosures surrounding their relationship with Lazard, and the potential conflicts that could create an incentive for Lazard to support the Proposed Merger.   This information is clearly material to shareholders considering that the Board's recommendation, is based in part on:

> the opinion, dated March 7, 2018, of Lazard to the Express Scripts board of directors as to the fairness, from a financial point of view and as of such date, of the Express Scripts merger consideration to be paid to holders of Express Scripts common stock in the proposed mergers and the other transactions contemplated by the merger agreement (other than as specified in Lazard's opinion), which opinion was based on and subject to the assumptions made, procedures followed, matters considered and qualifications and limitations on the review undertaken[.]

S-4 at 115.

53.     In sum, the S-4 independently violates: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial measure to its most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.   As the S-4 independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the S-4 to garner votes in support of the Proposed Merger from Express Scripts shareholders.

54.     Absent disclosure of the foregoing material information prior to the special shareholder meeting, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and are thus

threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act
and 17 C.F.R. § 244.100 Promulgated Thereunder)**

55.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any [S-4] or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

57.     As set forth above, the S-4 omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).

58.     The failure to reconcile the numerous non-GAAP financial measures included in the S-4 violates Regulation G and constitutes a violation of Section 14(a).

## COUNT II

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 Promulgated Thereunder)**

59.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

60.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in S-4 communications that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a-9.

61.     Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading*." 17 C.F.R. § 244.100(b) (emphasis added).

62.     Defendants have issued the S-4 with the intention of soliciting shareholder support for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the S-4, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

63.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the S-4, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

64.     The Individual Defendants knew or were negligent in not knowing that the S-4 is

materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

65.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

66.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the S-4.  The preparation of a S-4 statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the S-4 or failing to notice the material omissions in the S-4 upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

67.     Express Scripts is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the S-4.

68.     The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

69.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**(Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act)**

70.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

71.     The Individual Defendants acted as controlling persons of Express Scripts within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Express Scripts, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

72.     Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

73.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing the S-4.

74.     In addition, as described herein and set forth at length in the S-4, the Individual

Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

75.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

76.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

77.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the S-4;

C.     Directing Defendants to account to Plaintiff and the Class for all damages sustained

as a result of their wrongdoing;

      D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

      E.     Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

      Plaintiff demands a trial by jury on all issues so triable.

Dated:  June 28, 2018

                                       Respectfully submitted,

                                       **FARUQI & FARUQI, LLP**

                                     By: *_/s/ Michael Van Gorder_*
                                     Michael Van Gorder (#6214)
                                     20 Montchanin Road, Suite 145
                                     Wilmington, DE 19807
                                     Tel.: (302) 482-3182
                                     Email: mvangorder@faruqilaw.com

**OF COUNSEL:**                         *Counsel for Plaintiff*

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com


*Counsel for Plaintiff*